IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Benjamin Hendricks,                :

    Plaintiff,              :


    v.                      :      Case No. 2:15-cv-3130

                            :      JUDGE JAMES L. GRAHAM
Gary Mohr, et al.,                        Magistrate Judge Kemp

    Defendants.             :


REPORT AND RECOMMENDATION AND ORDER

This matter is before the Court on a motion to dismiss filed by defendants Anthony Ayers, Dr. Arthur Hale, Dr. Andrew Eddy, John Gardner, Director Gary Mohr, Stuart Hudson and the State of Ohio on behalf of certain unserved defendants. Plaintiff Benjamin Hendricks has filed a response and the motion has been fully briefed. For the following reasons, the Court will recommend that the motion to dismiss be granted in part and denied in part.

I. Background

A. Procedural History

Mr. Hendricks submitted his original complaint relating to the claims he is attempting to pursue in this case in August, 2012. At that point, Robert Austin was a co-plaintiff and the case was assigned Case No. 2:12-cv-729. The complaint named as defendants Mr. Ayers, Dr. Eddy, Mr. Gardner, Dr. Hale, Governor John Kasich, Dr. Khan, Gary Mohr, Mona Parks, and 50 John/Jane Does. Upon initial screening in October, 2012, then assigned Magistrate Judge Abel directed the Clerk to open a separate case to address Mr. Austin's claims. That case was opened as Austin

v. Kasich, Case No. 2:12-cv-983 and was closed on December 1, 2015. Mr. Hendricks remained as the named plaintiff in Case No. 2:12-cv-729.

In the initial screening Report and Recommendation in that case, Magistrate Judge Abel recommended that Mr. Hendricks' claims against Ms. Parks, Dr. Hale, Dr. Khan and Mr. Ayres be dismissed for failure to state a claim. He further recommended that Mr. Hendricks' claims against Governor Kasich, Mr. Mohr, Dr. Eddy, and Mr. Gardner be permitted to proceed because he had stated a claim for a violation of his Eighth Amendment rights arising from the alleged denial of medical care. More specifically, the Magistrate Judge found that, for screening purposes, Mr. Hendricks had stated a claim relating to his shoulder prosthesis against Dr. Eddy and Mr. Gardner; a claim relating to his hernias against Mr. Gardner; and a claim relating to alleged cost cutting measures resulting in the denial of treatment against Governor Kasich and Director Mohr. The Magistrate Judge recommended the dismissal of Mr. Hendricks' claims relating to his Crohn's disease, diversion colitis, and pain management. By order dated May 21, 2013, the assigned District Judge granted Governor Kasich's motion to dismiss and adopted and affirmed Judge Abel's Report and Recommendation.

Shortly following the Court's order, the Court of Appeals issued its decision in LaFountain v. Harry, 716 F.3d 944 (6th Cir. 2013), holding that, "under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." Id. at 951. Consequently, by order dated May 16, 2014, Mr. Hendricks was granted leave to amend his complaint in Case No. 2:12-cv-729, in part. That order described Mr. Hendricks' proposed amendments as follows:

    Mr. Hendricks seeks to add four previously unnamed

>       defendants - Steve Huffman, Stuart Hudson, Christine
>       Hall, and Dr. Christiansen, also referred to as Dr.
>       Christenson.  He also seeks to revive his previously
>       dismissed claims in this case relating to his medical
>       conditions, which are exceedingly well-documented in
>       the records of this Court, including a shoulder
>       prosthesis, ventral and parastomal hernias, pain
>       management, Crohn's disease and diversion colitis.  The
>       Court's reading of the proposed amended complaint is
>       borne out by Mr. Hendricks' reply which contains, in
>       response to defendants' opposition, his more specific
>       intentions in seeking to amend.

The Court permitted Mr. Hendricks to amend his complaint as it related to his claim that he had been denied medical treatment for his shoulder prosthesis against Dr. Eddy and Mr. Gardner to include allegations directed to Ms. Hall, Dr. Christenson, Dr. Hale, Dr. Khan, and Mr. Ayres.  The Court further permitted Mr. Hendricks to amend his complaint as it related to his Crohn's disease to assert a claim against Dr. Hale, Dr. Khan, and Mr. Ayres.  Additionally, the Court allowed Mr. Hendricks to include a claim relating to his diversion colitis against Mr. Gardner, Ms. Hall, Dr. Eddy, Dr. Christenson, Dr. Hale, Dr. Khan, and Mr. Ayres.  The Court denied, on grounds of futility, Mr. Hendricks' claim relating to his ventral and parastomal hernias and his claim relating to pain management.  With respect to both of these claims, the Court concluded that Mr. Hendricks had alleged nothing beyond a difference of opinion regarding his medical care insufficient to state a constitutional claim under the Eighth Amendment.  Finally, the Court permitted an amendment to include a claim for declaratory or injunctive relief only as to Mr. Hudson, Mr. Huffman, and Director Mohr and relating only to Mr. Hendricks' claim regarding his shoulder.  The Court directed Mr. Hendricks to file an amended complaint consistent with the order within fourteen days of its date.

Mr. Hendricks did not file an amended complaint as directed.

Rather, on May 21, 2014, he filed a motion to voluntarily dismiss his complaint without prejudice. On July 24, 2014, the Court issued a Report and Recommendation recommending that Mr. Hendricks' unopposed motion be granted. This Report and Recommendation was adopted by order dated November 25, 2014 and judgment was entered that same date.

On October 5, 2015, Mr. Hendricks filed a motion to reopen the case, relying, at least to some extent, on Ohio's Savings Statute. That motion, which defendants opposed on grounds of personal jurisdiction and Mr. Hendricks' failure to file an amended complaint as directed, was granted by order dated March 15, 2016. That order, directing the opening of this case, Case No. 2:15-cv-3130, stated:

> ... The Clerk shall open a new civil action. The effective filing date of that action is October 5, 2015. A copy of the motion to reopen and all subsequent filings in this case, including this Opinion and Order, shall be docketed in the newly-filed case. Mr. Hendricks shall file a complaint under the new case number within 30 days of the date of this order. He is responsible for paying the filing fee for that action, which he should do within thirty days, and for serving the complaint on the defendants, unless he applies for and is granted *in forma pauperis* status. Mr. Hendricks should contact the Clerk's office regarding his request for copies of any prior filings in this case.

Almost immediately, Mr. Hendricks requested an extension of time to file his complaint. Ultimately, on August 30, 2016, Mr. Hendricks filed his current complaint. The moving Defendants filed their motion to dismiss on January 19, 2017.

### B. Current Complaint

Mr. Hendricks' current complaint names as defendants Director Mohr, Dr. Eddy, Mr. Gardner, John DesMarais, Dr. Hale, Dr. Khan, Mr. Ayres, Mr. Huffman, Mr. Hudson, Ms. Hall, Dr.

Christenson, Dr. Akasubo, and 50 John/Jane Does, in both their individual and official capacities. The complaint sets forth claims relating to Mr. Hendricks' alleged denial of medical care for his left shoulder prosthesis, Crohn's disease, and diversion colitis. Mr. Hendricks also includes claims for the denial of medical care relating to his ventral and parastomal hernias and pain management.

As explained above, Mr. Hendricks' current complaint is the third iteration of his claims relating to his various medical conditions. The Court will not include a detailed explanation of these claims here for two reasons. First, they have been extremely well-documented over the course of Mr. Hendricks' litigation. More importantly, however, a detailed discussion of their nature is not necessary to a resolution of the motion to dismiss. Rather, as explained below, the basis of the Defendants' motion is that Mr. Hendricks' claims are barred by the statute of limitations. The Court will address the details of Mr. Hendricks' claims only to the extent that they bear on this issue. It is to that motion that the Court will now turn.

### C. <u>Motion to Dismiss</u>

In the motion to dismiss, Defendants first note that service has not been executed on Dr. Christenson, Ms. Hall, Dr. Akusoba, Dr. Khan, or Mr. Huffman. Further, they note that Mr. Hendricks' current complaint does not comply with the Court's order denying the motion to amend to the extent Mr. Hendricks seeks to assert claims relating to his hernias and alleged improper pain management.

More substantively, Defendants contend that Mr. Hendricks' claims in his original complaint arose more than two years prior to the submission date of his original complaint on August 10, 2012. As a result, they assert, Mr. Hendricks' claims are barred by the two-year statute of limitations applicable to

-5-

claims brought under 42 U.S.C. §1983.  As Defendants read the
allegations of Mr. Hendricks' complaint, June 21, 2010 is the
last date by which he could have known of any injury relating to
his shoulder, the treatment for his Crohn's disease was stopped
after a few infusions beginning in September, 2008, and he was
not treated for his colitis after his 2009 surgery.  They explain
that, because Mr. Hendricks' complaint was untimely in the first
instance, the Ohio Savings Statute is inapplicable here.  They
also assert that they are entitled to qualified immunity.

    Mr. Hendricks filed an uncharacteristically brief three-paragraph response.  The gist of his argument is that his action was brought well within the statute of limitations because of the continuing harm doctrine.

    In reply, Defendants note both the untimeliness of Mr. Hendricks' response and his apparent concession regarding failure to perfect service on certain defendants.  The focus of their reply, however, is that the continuing harm doctrine cited by Mr. Hendricks does not apply to 42 U.S.C. §1983 cases.  They also reiterate their claim of qualified immunity.

## II. Legal Standard

    Fed.R.Civ.P. 12(b)(6) provides that the Court may, upon motion, dismiss a claim for relief asserted in any pleading for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 8(a) requires the party pleading a claim for relief to make a "short and plain statement of the claim showing that the pleader is entitled to relief."  When evaluating such a claim in the context of a Rule 12(b)(6) motion, the Court must ordinarily accept as true all of the well-pleaded factual allegations of the complaint.  However, Rule 8(a) has been interpreted to require that the pleader allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...."  Bell Atlantic v. Twombley, 550

U.S. 544, 555 (2007). Moreover, the factual allegations themselves "must be enough to raise a right to relief above the speculative level ...." Id.

Twombley established a test of "facial plausibility," replacing the prior standard, announced in Conley v. Gibson, 355 U.S. 41 (1957), under which a complaint was able to withstand a motion to dismiss if there were any possibility that the pleader could prove a viable claim for relief. Expanding upon Twombley's "facial plausibility" test, the Supreme Court, in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal reiterated the principle that legal conclusions, couched as factual allegations, need not be accepted as true, and that the mere recital "of the elements of a cause of action, supported by mere conclusory statements," cannot save a claim from dismissal under Rule 12(b)(6). Id. at 1950. Further, Iqbal allows the reviewing court "to draw on its judicial experience and common sense" when deciding if it is plausible that the pleader can, based on the facts alleged, obtain any relief. Id. It is still true, however, that *pro se* complaints are construed liberally in favor of the pleader, even though they, too, must satisfy the "facial plausibility" standard articulated in Twombley. See Haines v. Kerner, 404 U.S. 519 (1972); Stanley v. Vining, 602 F.3d 767, 771 (6th Cir. 2010); see also Erickson v. Pardus, 551 U.S. 89 (2007). It is with these standards in mind that the instant motion will be decided.

### III. Analysis

#### A. Statute of Limitations

The Court's analysis begins with a brief discussion of precisely which of Mr. Hendricks' claims were before the Court

when he moved to voluntarily dismiss his original action. As explained above, these claims included only those relating to Mr. Hendricks' shoulder prosthesis, Crohn's disease, and diversion colitis. These are the claims to which the Defendants' motion to dismiss on statute of limitations grounds is directed.

Turning to this issue, in <u>Browning v. Pendleton</u>, 869 F.2d 989 (6th Cir. 1989), the Court of Appeals determined that the statute of limitations applicable to claims arising under 42 U.S.C. 1983 is the two-year statute of limitations found in Ohio Revised Code §2305.10. Ordinarily, the limitation period begins to run when a plaintiff knows or has reason to know of the injury which is the basis of his action. <u>Kuhnle Bros., Inc. v. County of Geauga</u>, 103 F.3d 516, 520 (6th Cir. 1997). Mr. Hendricks submitted his original complaint in this case in August, 2012. Consequently, the issue before the Court is whether any of the events that form the basis of Mr. Hendricks' claims can be found to have occurred prior to August, 2010.

Mr. Hendricks' current complaint, despite its status as the third version, remains rather light on specifics. He does not provide much detail in way of a timeframe as it relates to his claim involving his shoulder prosthesis. For example, with respect to this claim, the complaint states:

> 27) Sometime in June 2010 Plaintiff was seen to determine if he had any medical issues that might be a deterrent to performing surgery and he was medically cleared and told surgery was set for and around June 21, 2010.
>
> 28) Plaintiff was informed a few days later that his surgery was canceled and was given no reason for the cancellation and the appointment was never rescheduled.

Similarly, with respect to Mr. Hendricks' claim relating to medical care for his Crohn's disease, the complaint states:

> 36) Shortly after his incarceration in September 2009 Plaintiff was briefly hospitalized at OSUMC where he

-8-

>was started on Remicade.
>
>37) After a couple of infusions Defendant DesMarais stopped the treatment and nothing else was done to treat/maintain this medical condition causing pain, bleeding, etc.

Finally, with respect to his claim relating to his diversion colitis, Mr. Hendricks states in his complaint:

>53) During recovery from the 2009 hernia repair it was discovered Plaintiff also had diversion colitis and the treating physician at OSUMC started short-chain fatty-acid enemas as the normal/standard treatment.
>
>54) Upon Plaintiff's discharge from OSUMC this treatment was discontinued by Defendant Akasubo with no reason given even though symptoms persisted.
>
>55) When plaintiff was sent back to PCI he complained to his treating physician and was told Defendant DesMarais refused to approve the enemas because they were non-formulary.
>
>56) After 2 years of complaints, bleeding and pain Plaintiff had a meeting with Defendant Gardner who initially approved the enemas.
>...
>
>62) Plaintiff suffered pain, bleeding, mental anguish and other medical complications at the hands of Defendants Akasubo, DesMarais, Gardner, Eddy, Hall, Christenson, Hale, Khan and Ayers from November 2009 to November 2014.

Clearly, based on the minimal allegations addressed to the time frame of events, Mr. Hendricks' claims regarding his shoulder prosthesis and Crohn's disease can be found to have arisen prior to August, 2010. The initial triggering event cited by Mr. Hendricks relating to his shoulder was the alleged surgery cancellation without reason in late June, 2010. Further, the triggering event as he describes it with respect to his Crohn's disease was the cessation of his Remicade treatment following his

release from OSUMC in 2009.  Beyond this, he cites no additional dates with specificty.  Instead, as he explains in his response, he is relying on the continuing violation doctrine to save these claims. Defendants are correct, however, that that doctrine is rarely applied to §1983 claims.

As the Court of Appeals has explained:

> [A] "continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." Hensley v. City of Columbus, 557 F.3d 693, 697 (6th Cir. 2009) (citations omitted). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007) (internal quotation marks and alteration omitted).

Broom v. Strickland, 579 F.3d 553, 555 (6th Cir. 2009).

At best, Mr. Hendricks asserts with respect to these claims what can only be described as passive inaction after the alleged original denial of care in June, 2010 for his shoulder prosthesis and the fall of 2009 for his Crohn's disease.  For example, with respect to his claim regarding his shoulder prosthesis, his allegations further state very generally that "after a few years" he had a meeting to discuss his need for surgery and there was agreement regarding the decision to deny surgery.  Similarly, with respect to his claim regarding his treatment for Crohn's disease, he generally alleges that he "asked several times over the years about some form of treatment and has been continually denied."  This is insufficient to demonstrate a continuing violation.  Eidson v. State of Tennessee Dept. of Children's Services, 510 F.3d 631, 635 (6th Cir. 2007)("Passive inaction does not support a continuing violation theory").  That is, "[a]ctual actions ... of refusing medical care represent discrete

-10-

unlawful acts (beyond passive inaction) that trigger the statute of limitations." Bruce v. Correctional Medical Services, Inc., 389 Fed.Appx. 462, 466-467 (6th Cir. 2010). Mr. Hendricks simply does not identify any discrete action taken by any Defendants within the statute of limitations period with sufficient specificity to satisfy his burden here. Consequently, the Court will recommend that the motion to dismiss be granted as to Mr. Hendricks' claims relating to his shoulder prosthesis and Crohn's disease. This includes any claim for declaratory relief relating to his shoulder prosthesis.

Mr. Hendricks' allegations with respect to his colitis condition, however, are just slightly more detailed. With respect to this condition, Mr. Hendricks states that two years after its discovery in 2009, Mr. Gardner approved the use of enemas for treatment. This allegation indicates that, at some time in 2011, Mr. Gardner approved this course of treatment. Mr. Hendricks further alleges that, subsequently to Mr. Gardner's approval, certain other Defendants declined to resume this approved treatment. Construing the allegations in the light most favorable to Mr. Hendricks, the decision not to resume treatment for his colitis was made within two years of the submission of his complaint in August, 2012. As a result, this claim is not barred by the statute of limitations. Consequently, the Court will not recommend that the motion to dismiss be granted as to this claim on statute of limitations grounds.

B.  Ohio Savings Statute

Defendants further contend that the Ohio Savings Statute does not operate to permit Mr. Hendricks' untimely claims to survive. The Court agrees.

The Court of Appeals has determined that where a court "'uses a state's Statute of Limitations, [it] also use[s] its procedural rules affecting that Statute of Limitations[,]'

-11-

including any savings statute." Engler v. Arnold, 2016 WL 2610515, *2 (N.D. Ohio May 6, 2016), quoting Coleman v. Dep't of Rehab. & Corr., 46 Fed.Appx. 765, 769 (6th Cir. 2002). The Ohio Savings Statute, Ohio Rev. Code 2305.19, states, in relevant part:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

In order for the savings statute to apply, the initial action must have been filed within the applicable statute of limitations. Webster v. Spears, 664 Fed.Appx. 535, 537–38 (6th Cir. 2016); see also Graf v. Cirino, 2011 WL 2731355, *2 (Ohio 8th Dist. July 14, 2011)(Savings statute may apply to a claim filed within the time required by a statute of limitations but dismissed without prejudice after the appropriate statute of limitations has already expired). Because, as explained above, Mr. Hendricks' claims relating to his shoulder prosthesis and Crohn's disease initially were filed outside the statute of limitations, the Ohio Savings Statute does not apply to save them.

This is not the situation, however, with respect to Mr. Hendricks' claim relating to his colitis. The Court construed the allegations of the complaint as sufficient at this stage to demonstrate that this claim was filed within the applicable statute of limitations period. Further, a voluntary dismissal of a claim constitutes a failure "otherwise than on the merits" for purposes of the savings statute. Cooper v. City of Westerville, Ohio, 2014 WL 617650, *5 (S.D. Ohio Feb. 18, 2014).

Additionally, there is no dispute here that Mr. Hendricks re-filed his complaint within one year of his voluntary dismissal as required by the savings statute. Consequently, the Ohio Savings Statute operates to preserve this claim, but only to the extent that Mr. Hendricks' complaint existed at the time of his voluntary dismissal.

As explained above, Mr. Hendricks' operative complaint at that time is as reflected in the Court's order allowing him leave to amend. At that point, Mr. Hendricks had asserted a claim relating to his colitis against Mr. Gardner, Ms. Hall, Dr. Eddy, Dr. Christenson, Dr. Hale, Dr. Khan, and Mr. Ayres. Moreover, this claim was addressed only to the time period through the filing of Mr. Hendricks' motion on September 6, 2013. For this same reason, the savings statute does not work to save Mr. Hendricks' claims relating to his hernias and pain management to the extent he is attempting to reassert them in his current complaint.

### C. Qualified Immunity

To the extent that Defendants also raise the issue of qualified immunity, the Court will not recommend the dismissal of Mr. Hendricks' remaining claim on this ground. While Defendants assert this defense generally, they do not explain how it applies to the circumstances of this case. They essentially contend that their use of the phrase "qualified immunity" shifts the burden to Mr. Hendricks to demonstrate that they are not entitled to it. This argument is without merit and need not be addressed further.

### D. Remaining Issues

As Defendants note, service has not been completed on Dr. Christenson, Ms. Hall, Dr. Akusoba, Dr. Khan, and Mr. Huffman. The Court's docket further reflects that service also has not been completed on Dr. DesMarais or any of the John/Jane Doe

defendants. Mr. Hendricks did not address this issue in his response.

Fed. R. Civ. P. 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But, if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Because Mr. Hendricks has failed to show good cause why service was not made it will be recommended that his claims against these defendants be dismissed pursuant to Fed. R. Civ. P.4(m).

Finally, to the extent that Mr. Hendricks requested the appointment of counsel in his response, because this action has not yet progressed to the point that the Court is able to evaluate the merits of his claim, the motion for appointment of counsel is denied. See Mars v. Hanberry, 752 F.2d 254 (6th Cir. 1985).

## IV. Recommendation and Order

For the reasons set forth above, it is recommended that the motion to dismiss (Doc. 40) be granted in part and denied in part. It should be granted as to the Eighth Amendment claims relating to Mr. Hendricks' shoulder prosthesis, Crohn's disease, hernias, and pain management. It should be denied as to his Eighth Amendment claim relating to his colitis through September 6, 2013. All claims against Dr. Christenson, Ms. Hall, Dr. Akusoba, Dr. Khan, and Mr. Huffman, Dr. DesMarais and the John/Jane Doe defendants should be dismissed pursuant to Rule 4(m). Mr. Hendricks' request for appointment of counsel is denied.

## PROCEDURE ON OBJECTIONS TO REPORT AND RECOMMENDATION

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

## MOTION FOR RECONSIDERATION OF ORDER

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge